# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
CHANDRAKALLI SUKHNANDAN,
FARHANA AKTER, TARA SINGH-
PALTOO, and SONIA BAILEY, on behalf
of themselves and all others similarly
situated,

          Plaintiffs,

  -against-          Civ. No.: 12-CV-04216 (WHP)(RLE)

ROYAL HEALTH CARE OF LONG
ISLAND LLC d/b/a ROYAL HEALTH
CARE,

          Defendant.

------------------------------------------------------------x

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

  This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Plaintiffs (as hereinafter defined) and the class of individuals that they seek to represent (as hereinafter defined) and Defendant (as hereinafter defined) (together, "the Parties").

### RECITALS

  WHEREAS, Plaintiffs, Chandrakalli Sukhnandan, Farhana Akter and Tara Singh-Paltoo filed a Class Action Complaint on May 29, 2012, and Plaintiffs Chandrakalli Sukhnandan, Farhana Akter, Tara Singh-Paltoo and Sonia Bailey (hereafter "Plaintiffs") filed an Amended Complaint ("Complaint") on September 19, 2012;

  WHEREAS, the Complaint asserted class-action claims under the New York Labor Law ("NYLL") and collective-action claims under the Fair Labor Standards Act ("FLSA") and sought recovery of, among other things, unpaid overtime wages, liquidated damages, and attorneys' fees and costs;

  WHEREAS, by Stipulation, the Court entered an Order on September 14, 2012, conditionally certifying the case as a collective action pursuant to 29 U.S.C. § 216(b) for all claims asserted under the FLSA.

  WHEREAS, Defendant has denied and continues to deny all of the allegations made by Plaintiffs in the Litigation and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any fault, wrongdoing, liability or damages, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this

Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, the Parties have engaged in substantial discovery, including but not limited to taking depositions, interviewing numerous Plaintiffs and Class Members (as hereinafter defined), propounding and responding to document requests and interrogatories, reviewing thousands of pages of documents exchanged by the Parties, and analyzing time and payroll records;

WHEREAS, the Parties participated in an all-day mediation on May 17, 2013, with the assistance of Mediator Ralph Berger, Esq.;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation with respect to certain claims, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to the Plaintiffs and Class Members, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class Members;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. **DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1 **Agreement.** "Agreement" shall mean this Joint Stipulation of Settlement and Release.

1.2 **Claims Administrator.** "Claims Administrator" shall mean the entity selected by Plaintiffs to provide notice to the Class and administer payment of the settlement to Class Members.

1.3 **Class Counsel.** "Class Counsel" shall mean Shulman Kessler LLP and Fitapelli & Schaffer LLP.

1.4 **Class Members.** "Class Members" shall mean all FLSA Class Members and all Rule 23 Class Members, as defined below.

1.5 **Court.** "Court" shall mean the United States District Court for the Southern District of New York.

1.6 **Covered Period.** "Covered Period" shall mean the period from May 29, 2006, through the date on which the Court grants Preliminary Approval of the settlement.

1.7 **Defendant.** "Defendant" shall mean Royal Health Care of Long Island d/b/a Royal Health Care.

1.8 **Defendant's Counsel.** "Defendant's Counsel" shall mean Jackson Lewis LLP. For the purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Jonathan Kozak, Esq. of Jackson Lewis LLP.

1.9  **Effective; Effective Date.** The "Effective Date" is the date on which this Agreement becomes effective, which shall mean the later of: (1) thirty (30) days following the Court's Order Granting Final Approval of the settlement if no appeal is taken of the final approval order, or (2) the Court's entry of a final order and judgment after resolving any appeals.

1.10 **Escrow Account.** "Escrow Account" shall mean the interest-bearing account(s) created and controlled by the Claims Administrator.

1.11 **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.12 **FLSA Class Member.** "FLSA Class Members" shall be defined as individuals in the Marketing Representative, Retention Representative or similar or like job classifications who have opted into this Litigation as of the date this Agreement is fully executed and the individuals possessing of timely claims under the FLSA who subsequently receive notice and participate in the settlement.

1.13 **Litigation.** "Litigation" shall mean *Chandrakalli Sukhnandan, et al. v. Royal Health Care of Long Island LLC d/b/a Royal Health Care*, Case No. 12-CV-04216, pending in the United States District Court for the Southern District of New York.

1.14 **Net Settlement Fund.** "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deductions for Court-approved attorneys' fees and costs as described in Section 3.2, Court-approved service awards to Plaintiffs as described in Section 3.3, settlement administration fees and costs, as described in Section 2.1, any fees associated with investing and liquidating the Settlement Fund as described in Section 3.1, and any taxes incurred directly or indirectly as a result of investing the Settlement Fund and a $50,000 reserve to cover errors and omissions.

1.15 **Reserve Fund.** "Reserve Fund" shall mean the $50,000 reserved from the Settlement Fund identified above to address errors and omission in the calculation of Class Members' individual shares of the settlement, including but not limited to 1) claims from individuals claiming to be Class Members but not identified as such by Defendant and 2) Class Members' challenging their share of the Net Settlement Fund.

1.16 **Rule 23 Class; Rule 23 Class Member.** "Rule 23 Class" shall mean all individuals identified by Defendant as employed by Defendant in the Marketing Representative and/or Retention Representative positions between May 29, 2006, and May 17, 2013, who were employed for eight (8) or more workweeks, except that any individual who timely submits an exclusion request shall not be included in the Rule 23 Class. A member of the Rule 23 Class is a "Rule 23 Class Member."

1.17 **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the final Order entered by the Court after the Fairness Hearing.

1.18 **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and

conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.19   **Parties.** "Parties" shall mean Plaintiffs and Defendant.

1.20   **Plaintiffs.** "Plaintiffs" shall refer to Chandrakalli Sukhnandan, Farhana Akter, Tara Singh-Paltoo and Sonia Bailey and shall also include any and all representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

1.21   **Qualified Class Member.** "Qualified Class Member" shall mean (a) Rule 23 Class Members who do not opt out, pursuant to Section 2.7 of this Agreement, and (b) FLSA Class Members.

1.22   **Releasees.** "Releasees" shall mean Defendant, as defined herein, and Defendant's present and former parent companies, subsidiaries, related or affiliated companies, and their respective shareholders, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them.

1.23   **Settlement Fund.** "Settlement Fund" shall mean the total settlement fund of One Million Nine Hundred Forty Nine Thousand Dollars and No Cents ($1,949,000.00), plus any interest accrued as provided in Section 3.1(B).

1.24   **Individual Settlement Amount.** "Individual Settlement Amount" shall mean the amount payable to each Qualified Class Member pursuant to Section 3.4 of this Agreement.

2.   **APPROVAL AND CLASS NOTICE**

2.1   **Retention of Claims Administrator.** Within ten (10) calendar days after the execution of this Agreement, Plaintiffs' counsel shall retain a Claims Administrator to administer the settlement process. The Claims Administrator shall be responsible for mailing the notice, calculating Class Members' share of the Net Settlement Fund (pursuant to the formulas outlined in Section 3.4), and cutting and mailing checks to Qualified Class Members as provided herein. The Parties agree to cooperate with the Claims Administrator and assist it in any way possible in administering the Settlement. The Claims Administrator's fees shall be paid from the Settlement Fund.

2.2   **Preliminary Approval by the Court.** On or before July 19, 2013, unless otherwise agreed, Plaintiffs will submit to the Court a Motion for Preliminary Approval of the Class Action Settlement and Collective Action Settlement ("Preliminary Approval Motion"). In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Awards to Named Plaintiffs as more fully set forth herein.

2.3 **The Preliminary Approval Motion.** In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court, among other things: (a) a proposed Notice of Settlement of the Class/Collective Action Lawsuit and Fairness Hearing, which is appended hereto as Exhibit A, and (b) a proposed Order Granting Preliminary Approval. Plaintiffs will provide to Defendant the opportunity to review the proposed Order Granting Preliminary Approval prior to filing it. The Parties will work together diligently and in good faith to obtain preliminary and final approval expeditiously. The Preliminary Approval Motion will seek the setting of dates for Rule 23 Class Members to opt-out, objections, and a Fairness Hearing. Defendant will not oppose the Preliminary Approval Motion.

2.4 **Denial of Preliminary Approval.** If the Court denies the Motion for Preliminary Approval, then the Parties agree to jointly seek reconsideration of the ruling or seek Court approval of a renegotiated settlement. Should reconsideration and/or should the Parties' attempt to secure Court approval of a renegotiated settlement be denied, the case will proceed as if no settlement had been attempted, and Defendant shall retain the right to contest whether this case should be maintained as a class action or collective action and to contest the merits of the claims being asserted by Plaintiffs in this Litigation. In such a case, the Parties will negotiate and submit for Court approval a revised case management schedule.

2.5 **Final Order and Judgment from the Court.** Plaintiffs will seek to obtain from the Court, as a condition of settlement, a Final Order and Judgment in a form to be agreed upon by the Parties. The proposed Final Order and Judgment will, among other things: (a) finally certify the Rule 23 Class and FLSA Collective Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Class Members who have not timely opted out pursuant to Section 2.7, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Class Members who do not opt out from pursuing and/or seeking to reopen claims that have been released by this Agreement, (f) award class counsel fees and costs, (g) award service awards to the named Plaintiffs as more fully set forth herein and (h) incorporate the terms of this Agreement. Defendant will not oppose the application for the Final Order and Judgment.

2.6 **Class Notice**

(A) Within 14 days after preliminary approval, Defendant will provide the Claims Administrator and Class Counsel with a list, in electronic form, of the (1) names, (2) last known addresses, (3) last known telephone numbers, (4) social security numbers, and (5) dates of employment of each Class Member. The list will subsequently be supplemented with any additional names and information covering the period through the date on which the Court grants Preliminary Approval of the settlement. ~~Prior to Defendant providing social security numbers, the Claims Administrator shall confirm in writing that Defendant will be covered under the Claims Administrator's policy of insurance for any exposure or claim relating to any data breach by the Claims Administrator. Class Counsel agrees to execute any and all business association or engagement document(s) necessary for Defendant to obtain additional direct coverage for any data breach issues.~~ *BS / JK / NT*

5

    (B)    Within fourteen (14) days of the date on which Defendant provides the Class List, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing in the form appended hereto as Exhibit A to all Class Members using each individual's last known address as recorded in Defendant's records. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Member for whom the notice is returned by the post office as undeliverable, including using social security numbers to obtain better address information, and shall attempt re-mailings as described below. Defendant's Counsel and Class Counsel have the right to make reasonable inquiries and receive information from the Claims Administrator related to the claims administration process.

    (C)    If any Notices are returned to the Claims Administrator as undeliverable, the Claims Administrator will attempt up to two re-mailings per Class Member. The Claims Administrator shall, within 10 calendar days after the first mailing of the Notice, notify Class Counsel and Defendant's Counsel of the precise date of the end of the Opt-In/Out Period. However, to the extent one or more mailings is unsuccessful with regard to a specific class member, the class period for such class member will run from the date of the first mailing to such class member that was not returned as "undeliverable."

2.7    **Class Member Opt-Out.**

    (A)    Any Class Member may request exclusion from the Class by "opting out." Any Class Member who chooses to do so must mail a written, signed statement to the Claims Administrator that he or she is opting out of the Settlement ("Opt-Out Statement"). The Opt-Out Statement must contain the name, job title, address and telephone number of the Class Member to be valid. It must also contain the words "I elect to exclude myself from the settlement in *Chandrakalli Sukhnandan v. Royal Health Care of Long Island LLC d/b/a Royal Health Care*" in order to be valid. To be effective, such Opt-Out Statement must also be sent via mail and postmarked by a date certain to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which will be 45 calendar days after the Claims Administrator mails the Notice. The 45-day period will begin to run from the first mailing, except for those Class Members whose first mailing was returned to the Claims Administrator as undeliverable, in which case the 45-day period for any such Class Member will begin to run from the date of the second mailing (or, if there are more than 2 mailings, the final mailing) to such Class Member, unless another period is set by the Court. The Claims Administrator shall not attempt more than 2 mailings of the Notice. The end of the "Opt-Out Period" shall be 45 days after the last day on which the Claims Administrator makes a mailing, but in any event no later than 90 days from the Preliminary Approval Order The Claims Administrator shall, within 10 calendar days after the last day on which it makes such a mailing, notify Class Counsel and Defendant's Counsel of the precise date of the end of the Opt-Out Period.

    (B)    The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on

          Class Counsel and Defendant's Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendant's Counsel. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Stipulation.

    (C)    Any Rule 23 Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement and will be issued a Settlement Check, which will contain a release of both their FLSA and state law claims.

    (D)    Defendant shall have the right to revoke this agreement in the event that 1) 10% or more of the Class Members file exclusion forms by the deadline set by the Court for the submission of exclusion forms, or 2) 10% or more of the current opt-in Plaintiffs refuse to participate in this Settlement.

2.8    **Objections to Settlement.**

    (A)    Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be 45 calendar days after the Claims Administrator mails the Notice. The statement must contain the name, job title, address and telephone number of the Class Member to be valid. It must also contain the words "I object to the settlement in *Chandrakalli Sukhnandan v. Royal Health Care of Long Island LLC d/b/a Royal Health Care*" and set forth the reasons for the objection. Any reasons not included in the written objection will not be considered. The Claims Administrator shall stamp the date received on the original objection and send copies of each objection to Class Counsel and Defendant's Counsel not later than 3 calendar days after receipt thereof. Class Counsel shall file the date-stamped originals of any and all objections with the Clerk of Court within 10 calendar days after the end of the Opt-Out period.

    (B)    A Class Member who files objections to the settlement ("objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections by including the words, "I intend to appear at the Fairness Hearing" in his or her written objection. An objector may withdraw his/her objections at any time. No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this section and the previous sections Any Class Member who has requested exclusion may not submit objections to the settlement.

    (C)    The Parties may file with the Court written responses to any objections no later than 7 calendar days before the Fairness Hearing.

2.9   **Motion for Judgment and Final Approval.** No later than 14 calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval. The Fairness Hearing shall be held at the Court's convenience.

2.10  **Entry of Judgment.** At the Fairness Hearing, the Parties will request that the Court, among other things, (a) finally certify the Class for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Qualified Class Members, (d) dismiss the Litigation with prejudice, (e) enter an order permanently enjoining all Qualified Class Members from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (f) incorporate the terms of this Settlement and Release, (g) award Class Counsel fees and costs; and (h) award Service Awards to Named Plaintiffs as more fully set forth herein.

2.11  **Effect of Failure to Grant Final Approval.** In the event the Court does not enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the Parties agree to proceed as follows. The Parties jointly agree to (a) seek reconsideration of the decision denying entry of Judgment, or (b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. In the event any reconsideration is denied, or a mutually-agreed-upon settlement is not approved:

   (A)  The Litigation will proceed as if no settlement had been attempted. In that event, the class certified for purposes of settlement shall be decertified, and Defendant retains the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted by Plaintiffs in this action.

   (B)  The Court will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the last address used by the Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing.

   (C)  Upon notification from counsel for the Parties that the Agreement did not receive final approval, the Claims Administrator shall return to Defendant within 10 days the entire amount of the Settlement Fund, with any interest accrued thereon.

   (D)  Plaintiffs shall be responsible for 50% of the Claims Administrator's fees incurred, and Defendant shall be responsible for the remaining 50% of the Claims Administration's fees incurred.

3.    **SETTLEMENT TERMS**

3.1   **Settlement Payment.**

   (A)  Defendant agrees to pay One Million Nine Hundred Forty Nine Thousand Dollars and No Cents ($1,949,000.00), which shall resolve and satisfy: (a) Court-

       approved attorneys' fees and costs; (b) all amounts to be paid to Class Members; (c) Court-approved service payments to Plaintiffs and opt-ins; (d) the Claims Administrator's fees; (e) any fees associated with investing and liquidating the Settlement Fund, and (f) any taxes incurred directly or indirectly by Defendant as a result of investing the Settlement Fund to the extent not covered by accrued interest. Other than the employer's share of payroll taxes as described in Section 3.5(C), Defendant will not be required to pay more than One Million Nine Hundred Forty Nine Thousand Dollar and No Cents ($1,949,000.00) under this Agreement.

(B)   No later than 10 business days after the Court grants preliminary approval of the Settlement, Defendant shall deposit Nine Hundred Forty Nine Thousand Dollars and No Cents ($949,000.00) into the Escrow Account. No later than 10 business days after the Court grants final approval of the Settlement, Defendant shall deposit One Million Dollars and No Cents ($1,000,000.00) into the Escrow Account. Any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Settlement Fund.

(C)   Within 15 days of the Effective Date, the Claims Administrator will distribute the money in the Escrow Account by making the following payments:

    (1)   Paying Class Counsel's Court-approved attorneys' fees and costs as described in Section 3.2(A).

    (2)   Paying the Claims Administrator.

    (3)   Paying Court-approved service payments as described in Section 3.3.

    (4)   Paying Qualified Class Members their portion of the Settlement Payment as described in Section 3.4.

3.2   **Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)   Prior to the Fairness Hearing, Class Counsel shall petition the Court for no more than one-third of the Settlement Fund as an award of attorneys' fees. In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses from the Settlement Fund. Defendant will not oppose such applications.

(B)   The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Any monies not approved by the Court become part of the Net Settlement Fund.

3.3 **Service Payments to Plaintiffs.** Plaintiffs Chandrakalli Sukhnandan, Farhana Akter, Tara Singh-Paltoo and Sonia Bailey will apply to the Court to receive Ten Thousand Dollars ($10,000.00) each from the Settlement Fund for services rendered to the Class. Defendant will not oppose such application. The service awards and the requirements for obtaining such payments are separate and apart from, and in addition to, Plaintiffs' recovery from the Net Settlement Fund. The substance of the above-referenced Plaintiffs' application for service payments is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application(s) for service awards shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval. Any monies not approved by the Court become part of the Net Settlement Fund.

3.4 **Distribution to Qualified Class Members.**

(A) Qualified Class Members will be deemed eligible for a payment hereunder.

(B) A Qualified Class Member's proportionate share of the Net Settlement Fund shall be determined by the Claims Administrator pursuant to the formula set forth below:

(1) Each Qualified Class Member shall be assigned 1 point for each workweek between May 29, 2006, and the date of the Court's order preliminarily approving the settlement.

(2) Each Qualified Class Member who is also an FLSA Class Member shall be assigned .8 additional points for each workweek between the date three years before his or her consent-to-join form was filed with the Court and the date on which the Court preliminarily approves the settlement.

(3) To calculate each Qualified Class Member's proportionate share:

(a) Add all points for Qualified Class Members together to obtain the "Total Denominator;"

(b) Divide the number of points for each Qualified Class Member by the Total Denominator to obtain each Qualified Class Member's "Portion of the Net Settlement Fund."

(c) Multiply each Qualified Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Qualified Class Member's "Settlement Award."

The Claims Administrator's calculations regarding Qualified Class Members' proportionate shares of the Net Settlement Fund will be final and binding.

(C) Defendant and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5.

10

(D) The Claims Administrator shall mail to all Qualified Class Members their proportionate share of the Net Settlement Fund within 15 days of the Effective Date. The Claims Administrator shall use reasonable efforts to make an additional mailing to Qualified Class Members whose checks are returned because of incorrect addresses. Such efforts shall include using social security numbers to obtain better address information. Any additional efforts undertaken shall be in the sole discretion of the Claims Administrator. The Claims Administrator shall not utilize or disclose information received in connection with this Agreement except in connection with executing the terms of this Agreement.

(E) Qualified Class Members will have ninety (90) calendar days after their check date to redeem their settlement payments. If Qualified Class Members do not redeem their settlement payment checks within the 90-day period, their settlement checks will be void. If a Qualified Class Member alerts Class Counsel, Defendant's Counsel, or the Claims Administrator during the 90-day period to redeem settlement payments that he or she has not received his or her settlement check, the Claims Administrator will, upon confirming that the settlement check in question has not been redeemed, issue a stop payment on the Qualified Class Member's original settlement check and reissue that Qualified Class Member's settlement check. All such reissued checks will be valid for forty-five (45) days after the date of issue and will be void thereafter.

(F) If, in the Settlement Administrator's view, it would be administratively feasible to redistribute the amount remaining in the Settlement Fund after all allocations, the Settlement Administrator will so advise the Parties. The Parties will then meet and confer regarding whether to redistribute the remaining amount among the Class Members who cashed their settlement checks after the first distribution or donate the amount to a *cy pres* designee. At this time, the Parties believe that an amount greater than $50,000 should be redistributed among the Class Members, subject to the Settlement Administrator advising the Parties of the costs associated with the redistribution and the administrative feasibility of such a redistribution. The Claims Administrator will use the amount remaining to pay for the cost of the second distribution. If the Parties decide it would not be administratively feasible to redistribute the amount remaining in the Settlement Fund after all allocations, it will be donated to a *cy pres* designee. The parties shall endeavor to jointly select a designee to propose to the Court for its approval. If the parties are unable to agree on a designee, they shall each propose one to the Court, which shall make the final determination. Amounts remaining after the first distribution may be used to resolve any additional claims made by Class Members or individuals claiming to be Class Members who are not identified as such by Defendant subject to Section 3.4(G) below.

(G) There will be no reversion to the Defendant. The entire Net Settlement Fund will be divided among Qualified Class Members based on the allocation formula set forth in Section 3.4(B) above. To the extent 30 or fewer individuals come forward who are determined to be Class Members but who were not identified by Defendant, the parties agree to use the Reserve Fund to compensate them according to the formula in Section 3.4(B). If more than 30 such individuals come forward, Defendant shall make an additional payment to the Escrow

11

Account to cover all such claims in accordance with the formula in Section 3.4(B).

(H) All payments to Qualified Class Members made pursuant to this Agreement shall be deemed to be paid to such Qualified Class Members solely in the year in which such payments actually are received by the Class Members. It is expressly understood and agreed that the receipt of such Settlement Payments will not entitle any Class Member to additional compensation or benefits under any of Defendant's bonus, contest or other compensation or benefit plans or agreements in place during the Class Period, nor will it entitle any Class Member to any increased retirement, 403b plan, 401K benefits or matching benefits or deferred compensation benefits. It is the intent of this Settlement that the Settlement Payments provided for in the Stipulation of Settlement are the sole payments to be made by Defendant to the Class Members, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the Settlement Payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the Class Period).

3.5 **Taxability of Settlement Payments.**

(A) For tax purposes, 50% of payments to Qualified Class Members pursuant to Section 3.4 shall be treated as back wages and 50% of such payments shall be treated as liquidated damages and prejudgment interest.

(B) Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages and interest pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding. Class Counsel will receive a Form 1099 for this payment. Any service paymentspursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C) Defendant shall be responsible for any and all applicable employer tax contributions associated with wage payments, including but not limited to Defendant's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.5(A). Any such payroll taxes ordinarily borne by the employer shall be paid by Defendant in addition to the Settlement Payment, and shall not be paid out of the Settlement Fund. Any tax responsibility for the non-wage portion of the payments to Qualified Class Members shall not be Defendant's responsibility.

(D) Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that each individual Class Member will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.5(C)). Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that they have not relied upon any advice from Defendant as to the taxability of the payments received pursuant to this Agreement.

3.6 Release

(A) **Release of Claims.** Upon the Effective Date (*see* Section 1.9) of the settlement, the Plaintiffs, and each Class Member who does not timely opt out, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Defendant, Defendant's present and former parent companies, subsidiaries, related or affiliated companies, and their respective shareholders, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them (collectively, the "Releasees"), from any and all claims for any wage and hour violations under federal, state, and/or local law, including but not limited to, any and all claims for unpaid wages, gap time pay, overtime pay, failure to maintain and furnish employees with proper wage records and all other claims that were or, could have been asserted in the Litigation, whether known or unknown, under federal, state, and/or local wage and hour laws (including but not limited to the NYLL and New York Code of Rules and Regulations), through the Effective Date of this Agreement. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees and costs. In addition, each Qualified Class Member specifically and affirmatively releases Defendant from any FLSA claims for unpaid minimum wages, overtime wages, liquidated damages, and attorneys' fees and costs related to such claims, that were or could have been asserted in the Litigation, whether known or unknown, through the date of preliminary approval of the settlement.

Individuals who are not already FLSA Class Members but have worked within their respective FLSA limitations period will release their claims under the FLSA through the signature line on their settlement checks, which Defendant will then file with the Court. Rule 23 Class Members who file claims shall be issued settlement checks with the following language:

> By endorsing this check, I consent to join the FLSA collective action against Defendant styled *Chandrakalli Sukhnandan v. Royal Health Care of Long Island LLC d/b/a Royal Health Care, 12-CV-04216,* and release Defendant from all wage and hour claims under the Fair Labor Standards Act which have been brought in the Litigation or that are based on the same facts and circumstances as the claims in the Litigation, including

13

>but not limited to overtime wage claims for all time periods through [TO BE INSERTED- the date on which the Court grants preliminary approval], and expressly release any such claims.

The Claims Administrator will provide Defendant with a photocopy of the front and back of each endorsed check, which Defendant may then file with the Court.

(B) **Release of Fees and Costs for Settled Matters.** Except as provided for in this agreement, class Counsel and Plaintiffs, on behalf of the Class and each individual Qualified Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant for attorneys' fees or costs associated with Class Counsel's representation of Plaintiffs and the Class in the Litigation.

(C) **No Assignment.** Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any interest or claim in this Litigation, or any portion thereof.

(D) **Non-Admission of Liability.** By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiffs and/or the Class, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class- or collective-action litigation other than for purposes of settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

3.7 **Miscellaneous**

(A) **No Retaliation.** Defendant agrees not to retaliate against any workers for their participation in this settlement or litigation.

(B) **Cooperation Among the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver

14

such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(C) **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(D) **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Qualified Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

(E) **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(F) **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(G) **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(H) **Severability.** Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect. However, if any portion of the Release of Claims provisions in paragraph 3.6 is held to be unenforceable for any reason by a court of competent jurisdiction in an action commenced by a Qualified Rule 23 Class Member or by any other person acting on their behalf, then the Qualified Rule 23 Class Member shall return to Defendant the payment received by the Qualified Rule 23 Class Member under this Agreement.

(I) **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(J) **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

(J) **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(K) **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendant had signed the same instrument. The failure of one or more Plaintiff to sign this Agreement does not affect its enforceability.

(L) **Facsimile/Electronic Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

DATED: ~~July~~ 2013
Aug 1

Royal Health Care
By: _Edward Koslo_ (signature)
Its: _VICE PRESIDENT_

DATED: July 30, 2013

Chandrakalli Sukhnandan
_(signature)_

DATED: July 30, 2013

Farhana Akter
_(signature)_

16

DATED: July 30, 2013          Tara Singh-Paltoo

                              _____

DATED: July ___, 2013         Sonia Bailey
        August 1, 2013
                              _____