UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANDRAKALLI SUKHNANDAN, FARHANA AKTER, TARA SINGH-PALTOO, AND SONIA BAILEY, on behalf of themselves, FLSA Collective Plaintiffs and the Class, | : : : : : : |
| Plaintiffs, | : : |
| - against - | : : |
| ROYAL HEALTH CARE OF LONG ISLAND LLC d/b/a ROYAL HEALTH CARE, | : : : |
| Defendant. | : : |

**OPINION AND ORDER**

**12cv4216 (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I.   INTRODUCTION

Plaintiffs Chandrakalli Sukhnandan, Farhana Akter, Tara Singh-Paltoo, and Sonia Bailey (collectively "The Named Plaintiffs") worked as Marketing Representatives for Royal Health Care of Long Island, LLC d/b/a Royal Health Care ("Royal Health Care"). On May 29, 2012, Plaintiffs Sukhnandan, Akter, and Singh-Paltoo commenced this action as a putative class action under Federal Rule of Civil Procedure 23 and as a collective action under 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated Marketing Representatives, claiming that Royal Health Care failed to pay them overtime wages to which they were entitled under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (Compl. ¶¶ 2, 41.) Plaintiffs Sukhnandan, Akter, and Singh-Paltoo amended the Complaint on September 19, 2012. The Amended Complaint added Sonia Bailey as a Named Plaintiff, and brought additional claims of

unpaid overtime on behalf of Retention Representatives[1] employed by Royal Health Care.  In addition to unpaid wages, the Named Plaintiffs sought liquidated damages, pre-judgment interest and post-judgment interest, a declaratory judgment that the actions complained of are unlawful, equitable and injunctive relief, and costs and attorneys' fees.  (Am. Compl. at 17-18.)  On June 12, 2013, the Parties consented to conduct all proceedings before the undersigned.  (Docket No. 183.)

Plaintiffs are employees of Royal Health Care, a health care technology and services company that operates in New York.  (Am. Compl. ¶ 2.)  Before the Court is a motion for final approval of the class action settlement.

Having considered the Motion for Final Approval of Class Action Settlement, the supporting declarations, and the oral argument presented at the January 6, 2014 fairness hearing, and the complete record  in this matter, for the foregoing reasons, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

The Court certifies the following class under Federal Rule of Civil Procedure 23(a) and (b)(3), for settlement purposes (the "Rule 23 Class Members"):

(1) all individuals identified by Royal Health Care as employed by Royal Health Care in the Marketing Representative and/or Retention Representative positions between May 29, 2006, and May 17, 2013, who were employed for eight (8) or more work-weeks.

---

[1]Plaintiffs claimed that Retention Representatives "are responsible for contacting individuals who need to recertify or submit updated documents in order to maintain their benefits, as well as enroll new applicants."  (Am. Compl. ¶ 6.)

## II.   BACKGROUND

After exchanging document discovery to enable Plaintiffs to calculate damages and undertaking negotiations, the Parties reached a settlement totaling $1,949,000.   Mem. of Law in Supp. of Pl.'s Mot. for Final Approval (Pl. Mem.) at 4.   The Parties reached this settlement after Plaintiffs Sonia Bailey and Tara Singh-Paltoo appeared for depositions and after a full-day mediation with Ralph Berger on May 17, 2013.   (*Id.*)   At the mediation, the Parties reached an initial agreement on settlement.   *Id.*   In the following weeks, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Settlement Agreement and Release ("Settlement Agreement") that was fully executed on August 1, 2013.   Decl. Of Brian S. Schaffer In Supp. Of Pl. Mot. For Final Approval of Class Action Settlement ("Schaffer Decl.") ¶ 26, Ex. A.

On September 3, 2013, this Court entered an Order preliminarily approving the settlement, preliminarily certifying the settlement class under New York Labor Law, conditionally certifying the settlement class under FLSA, preliminarily approving of Fitapelli & Schaffer, LLP, and Shulman Kessler, LLP, as class counsel, and authorizing notice to all Class Members.   (Docket No. 190.)

On October 1, 2013, the claims administrator sent Court-approved notices to 409 Class Members informing them of their rights under the settlement, including the right to opt out of or object to the settlement for Class Members in New York, the state where Rule 23 claims were brought; the Plaintiffs' request for service awards in the total amount of $40,000 to be paid to the Named Plaintiffs; and Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees, and reimbursement of their out-of-pocket expenses.   Schaffer Decl. Ex. B ¶ 8, Ex. C.   Notices were returned by the U.S. Postal service and the claims administrator was unable

3

to find a successful forwarding address for four class members. *Id.* ¶¶ 10-12. The claims administrator sent Court-approved notices to two additional class members on November 20, 2013. *Id.* ¶ 13. No class members objected to or opted out of the settlement. Schaffer Decl. Ex. B ¶¶ 14, 15.

On December 18, 2013, Plaintiffs filed a Motion for Final Approval of Class Action Settlement ("Motion for Final Approval"). Defendants took no position with respect to the motion and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on January 6, 2014. There were no objections at the hearing.

### III.   DISCUSSION

Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3). Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are approximately 411 Rule 23 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members."). The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement. The Named Plaintiffs and the Class Members share common issues of fact and law, including whether Defendants failed to pay overtime premiums in violation of federal and state wage and hour laws, and whether Defendants failed to keep accurate records of the hours the Named Plaintiffs and Class members worked. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay); *Clark v. Ecolab Inc.*, No. 07cv8623 (PAC), 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues that help to satisfy Rule 23

4

commonality requirement include "whether [Defendant] failed to pay Plaintiffs and the state settlement Class Members overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [Defendant] maintained accurate time records of the hours Plaintiffs and the state settlement Class Members worked").

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because the Named Plaintiffs' claims arose from the same factual and legal circumstances that form the bases of the Class Members' claims. *See Morris*, 859 F. Supp. 2d at 616. Plaintiffs also satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that the Named Plaintiffs' and the Class Members' interests are at odds. *Id.* at 616; *Johnson v. Brennan*, No. 10cv4712 (CM), 2011 WL 4357376, at *5 (S.D.N.Y. Sept. 16, 2011).

In addition, Plaintiffs' counsel, Fitapelli & Schaffer and Shulman Kessler, will adequately represent the interests of the Class. Fed. R. Civ. P. 23(a)(4). *See Girault v. Supersol 661 Amsterdam, LLC*, No. 11cv6835 (PAE), 2012 WL 2458172, at *2 (S.D.N.Y. June 28, 2012) (referring to Fitapelli & Schaffer as "'experienced and well-qualified employment lawyers and class action lawyers'" with "'particular expertise in prosecuting and settling wage and hour class actions'") (quoting *Matheson v. T-Bone Restaurant, LLC, et al.*, No. 09cv4214 (DAB), 2011 WL 6268216, at *3 (S.D.N.Y. Dec. 13, 2011)); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (finding Shulman Kessler to have "substantial experience prosecuting and settling wage and hour actions"); *O'Dell v. AMF Bowling Centers, Inc.*, No. 09cv759 (DLC), 2009 WL 6583142, at *2 (S.D.N.Y. Sept. 18, 2009) (describing Fitapelli & Schaffer as "experienced and well-qualified employment lawyers and class action lawyers"). Plaintiffs also satisfy Rule 23(b)(3). Plaintiffs' common factual allegations and a common legal theory – that Defendants violated federal and state wage and hour laws by failing to pay overtime wages –

predominate over any factual or legal variations among class members. *See Torres v. Gristede's Corp.*, No. 04cv3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages").

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Reyes v. Altamarea Grp., LLC*, No. 10cv6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011). The Named Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will not only achieve economies of scale for class members, but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste, delay, and repetitive proceedings and by preventing inconsistent adjudications. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (class action against automobile company for defective latches superior when individual claims would burden judiciary and when high litigation costs relative to potential relief would disincentivize individual plaintiffs from bringing claims); *see also Morris*, 859 F. Supp. 2d at 617; *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).

## A.    Approval of Settlement Agreement

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To

determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05cv10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *Spann v. AOL Time Warner, Inc.*, No. 02cv8238 (DLC), 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005).

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation, Third, § 30.42 (1995)); *see also D'Amato*, 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06cv13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

## 1.     Procedural Fairness

The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Reyes*, 2011 WL 4599822, at *4. The settlement was reached after the

Parties had conducted a thorough investigation and evaluated the claims and defenses, and after arm's-length negotiations between the Parties.  Schaffer Decls. ¶¶ 17-19, 23, 27-28.

Because of the high number of opt-in Plaintiffs, discovery before the mediation was limited to a sample of 10 collective Class Members and the Named Plaintiffs ("the Sample Group").  *Id.* ¶ 18.  Class Counsel reviewed hundreds of pages of documents from Class Members, including "pay stubs, compensation reports, compensation plans, offer letters, performance reviews, and job descriptions."  *Id.* ¶ 7.  Class Counsel examined Royal Health Care's records for the Sample Group including employee folders, performance reviews, and compensation records.  *Id.* ¶ 21.  Class Counsel also sought the assistance of an expert to conduct a search of the Sample Group's email accounts to find documents to support the Plaintiffs' claims.  *Id.* ¶ 19.  In addition, Class Counsel met with the Named Plaintiffs and opt-in Plaintiffs to discuss Royal Health Care's time keeping practices and compensation policies.  *Id.* ¶ 22.  Based on the pre-mediation discovery and meetings with Class Members, Plaintiffs were able to perform damages calculations and draft a mediation statement.  *Id.* ¶ 23.  The Parties attended a full-day mediation on May 17, 2013, before mediator Ralph Berger, Esq.  *Id.* ¶ 24.  The Parties came to a preliminary agreement on the material terms of the settlement at the mediation.  *Id.* ¶ 26.  The Parties' arm's-length settlement negotiations involved counsel and a professional mediator, raising a presumption that the settlement achieved meets the requirements of due process.  *See Wal-Mart Stores*, 396 F.3d at 116; *In re Penthouse Executive Club Comp. Litig.*, No. 10cv1145 (KMW), 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("A settlement . . . reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process.") (internal quotation marks and citation omitted); Reyes, 2011 WL 4599822, at *4.

In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11cv8472 (KBF)(DCF), 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09cv10211 (LTS)(HP), 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10cv4082 (JCF), 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02cv6527 (DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The parties here acted responsibly in reaching an early pre-suit settlement. *See Hernandez*, 2012 WL 5862749, at *2; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

## 2. Substantive Fairness

The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d

at 463.

Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval. The Class's reactions to the settlement has been positive. The Notices included an explanation of the allocation formula and an estimate of each Class Member's award. *Id.* Ex. C. The Rule 23 Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so. *Id.* No Class Member has opted out of or objected to the Settlement. Schaffer Decl. Ex. B ¶¶ 14, 15. This favorable response demonstrates that the class approves of the Settlement and supports final approval. *See Willix v. Healthfirst, Inc.*, No. 07cv1143 (ENV)(RER), 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class member submitted timely objections and two requested exclusion); *Khait v. Whirlpool Corp.*, No. 06cv6381 (ALC), 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (the fact that no class members objected and two opted out demonstrated favorable response weighing in favor of final approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

The Parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). Here, through an efficient, cooperative exchange of information, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue. *See Matheson v. T-Bone Rest., LLC*, No. 09cv4214 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) (finding that, "through an efficient,

informal exchange of information, Plaintiffs obtained sufficient discovery to weigh the strengths

and weaknesses of their claims"). Class Counsel conducted in-depth interviews with Class

Members to determine the hours they worked, the wages they were paid, the nature of their

duties, and other relevant information. Schaffer Decl. ¶ 6. Plaintiffs also obtained a significant

number of documents from Defendants through discovery, which enabled Plaintiffs to perform

detailed damages calculations. *Id.* ¶ 21. The Parties' participation in a full day mediation

conducted by an experienced employment law litigator allowed them to further explore the

claims and defenses. *Id.* ¶ 24. Plaintiffs Sonia Bailey and Tara Singh-Paltoo also appeared for

full-day depositions. *Id.* ¶ 19. The third *Grinnell* factor weighs in favor of final approval.

     The risk of establishing liability and damages further weighs in favor of final approval.

"Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104,

126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the uncertainty of a

trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also*

*Velez v. Majik Cleaning Serv., Inc.*, No. 03cv8698 (SAS)(KNF), 2007 WL 7232783, at *6

(S.D.N.Y. June 25, 2007). Here, Plaintiffs faced numerous risks as to both liability and

damages, including overcoming Royal Health Care's defenses that: (1) Class Members were

appropriately classified as exempt from overtime pay as they fell within the FLSA's outside

sales exemption; and (2) the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct.

1426 (2013) prohibited Plaintiffs from certifying a class pursuant to Federal Rule of Civil

Procedure 23 because the damages at issue are "highly individualized." Schaffer Decl. ¶ 25.

Royal Health Care also disputed the rate at which Plaintiffs were calculating overtime wages.

*Id.* With respect to the issue of Plaintiffs' classification as exempt, Plaintiffs admit that it would

be difficult and would require intensive fact discovery to establish that Plaintiffs were not

engaged in sales, and thus not exempt under FLSA's outside sales exemption.  Plaintiffs also admit that they might have difficulty establishing that they worked the hours that they claim to have worked and that they were not paid appropriately for those hours.  The proposed settlement eliminates this uncertainty.  This factor therefore weighs in favor of final approval.

The risk of obtaining collective and class certification and maintaining both through trial is also present.  Contested collective and class certification motions would likely require extensive discovery and briefing.  If the Court did authorize notice to the FLSA collective, Defendants would likely challenge that determination by seeking decertification at a later date, after the close of discovery.  Defendants might challenge class certification by arguing that individualized questions preclude class certification.  If the Court were to grant class certification, Defendants might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing.  Plaintiffs' Settlement eliminates the risk, expense, and delay inherent in the litigation process.  The sixth *Grinnell* factor weighs in favor of final approval.

Even if Royal Health Care could have withstood a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (alterations and citation omitted)).  Accordingly, this factor is neutral and does not preclude the Court from approving the settlement.

The substantial amount of the settlement weighs in favor of final approval.  The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re*

12

*Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The seventh *Grinnell* factor weighs in favor of final approval. .

## B.    Approval of the FLSA Settlement

Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *see Reyes*, 2011 WL 4599822, at *6. Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Reyes*, 2011 WL 4599822, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354; *Reyes*, 2011 WL 4599822, at *6.

In this case, the settlement was the result of arm's-length negotiation involving vigorous back and forth. Schaffer Decl. ¶ 28. During the entire process, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding that is fair and reasonable. The Court hereby approves the FLSA settlement.

### C.     Dissemination of Notice

Pursuant to the Preliminary Approval Order on October 1, 2013, the Claims

Administrator, Kurtzman Carson Consultants LLC ("KCC"), sent the Rule 23 and FLSA Notices

by first-class mail to each Class Member at his or her last known address.  Schaffer Decl. Ex. B

¶ 8.  Five Class Members were mailed a Notice Packet at two different mailing addresses to best

ensure notice.  *Id.*  KCC remailed notices to two Class Members after the initial Notices were

returned with new forwarding addresses.  *Id.* ¶ 9.  Between October 1, 2013, and November 15,

2013, Notice Packets for 24 Class Members were returned without forwarding addresses.  *Id.* ¶

10.  KCC searched credit and other public source databases and found new addresses for 21 of

those Class Members and remailed them Notice Packets.  *Id.*  Of those 21 Notice Packets, one

was returned without a forwarding address and no further updated address was found for that

Class Member.  *Id.* ¶ 11.

The Court finds that the Rule 23 and FLSA Notices fairly and adequately advised Class

Members of the terms of the Settlement as well as the right of Rule 23 Class Members to opt out

of or object to the Settlement, and to appear at the fairness hearing conducted on January 6,

2014.  The Class Members were provided with the best notice practicable under the

circumstances.  The Court further finds that the Notices and their distribution comported with all

constitutional requirements, including those of due process.  The Court confirms KCC as the

claims administrator.

### D.     Attorneys' Fees and Costs, Administration Fees, and Service Awards

On September 3, 2013, the Court preliminarily approved of  Fitapelli & Schaffer and

Shulman Kessler as Class Counsel for the Class because they met all of the requirements of

Federal Rule of Civil Procedure 23(g).  *See Damassia*, 250 F.R.D. at 165 (Rule 23(g) requires

the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class") (internal quotation marks omitted).

Class Counsel are experienced employment lawyers. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests. Class Counsel conducted in-depth interviews with Class Members to determine the hours they worked, the wages they were paid, the nature of their duties, and other relevant information. Schaffer Decl. ¶ 6. Class Counsel "review[ed], analyz[ed], and digest[ed] thousands of documents and synthesiz[ed] Class Members' data" to prepare a "comprehensive class-wide damages analysis and draft an extensive mediation statement which evaluated the strengths and weaknesses of Plaintiffs' claims." *Id.* ¶ 23. Class Counsel have committed substantial resources to prosecuting this case. *Id.* ¶ 49; Decl. Of Troy L. Kessler In Supp. Of Pl. Mot. For Final Approval of Class Action Settlement ("Kessler Decl.") ¶ 16.

The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases such as this one. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 121; *Reyes*, 2011 WL 4599822, at *7. Although the Court has discretion to award fees based on either the lodestar method or the percentage-of-recovery method, *McDaniel*, 595 F.3d at 417, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *Sewell*, 2012 WL 1320124, at *13; *Reyes*, 2011 WL 4599822, at *7. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might

15

otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08cv7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *Reyes*, 2011 WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3.

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Reyes*, 2011 WL 4599822, at *7; *Sand*, 2010 WL 69359, at *3. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Reyes*, 2011 WL 4599822, at *7 ("[T]he purposes of [FLSA and the NYLL] are served by adequately compensating attorneys who protect wage and hour rights."); *Sand*, 2010 WL 69359, at *3. Class Counsel's request for 33.3% of the Fund, or $649,666.66, is reasonable and "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05cv3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir. 2008) does not address a common fund fee petition, it supports class counsel's request for one third of the fund because "'reasonable, paying client[s]' . . . typically pay one-third of their recoveries under private retainer agreements." *Reyes*, 2011 WL 4599822, at *8 (quoting *Arbor Hill*, 522 F.3d at 191) (internal citation omitted). *See also deMunecas v. Bold Food, LLC*, No. 09cv440 (DAB), 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010) (finding class counsel's request for one third of the fund reasonable).

In addition, no Class Member objected to Class Counsel's request for one third of the

16

fund, which also provides support for Class Counsel's fee request.

### 1.   *Goldberger* Factors

Reasonableness is the touchstone when determining whether to award attorneys' fees.  In *Goldberger v. Integrated Resources, Inc*, 209 F.3d 43, 50 (2d Cir. 2000), the Second Circuit set forth the following six factors to determine the reasonableness of a fee application: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

#### a.   Class Counsel's Time and Labor

As previously explained, Class Counsel spent significant effort to achieve $1,949,000 Settlement.  Before the initiation of this action, Plaintiffs conducted a thorough investigation, including "factual investigation and legal research on the underlying merits of the class claims, the proper measure of damages, and the likelihood of class certification."  Schaffer Decl. ¶ 5. Class counsel conducted in-depth interviews with Plaintiffs, opt-ins, and Class Members to determine "their hours worked, their wages paid, the nature of their duties and other relevant information."  *Id.*  ¶ 6.  Class Counsel also obtained and reviewed hundreds of documents from Class Members including "pay stubs, compensation reports, compensation plans, offer letters, performance reviews, and job descriptions." *Id.*  ¶ 7.

Plaintiffs engaged in vigorous, arm's length settlement negotiations with Royal Health Care.  Schaffer Decl. ¶ 28.  Class Counsel obtained and reviewed hundreds of pages of records supplied by Royal Health Care, including "employee folders, performance reviews, and compensation records . . . as well as rates of pay . . . ." *Id.*  ¶ 21.  In addition, Class counsel obtained the assistance of an expert in reviewing Class Members' email accounts for electronic

17

documents that would support their claim. *Id.* ¶ 19. After Class Counsel had analyzed thousands of pages of documents, they were able to prepare a "comprehensive class-wide damages analysis" and draft an "extensive mediation statement." *Id.* ¶ 23.

On May 17, 2013, the Parties attended a mediation session before experienced employment law mediator Ralph Berger, Esq. *Id.* ¶ 24. At the mediation, the Parties reached a settlement in principle. Over the following several weeks the Parties worked on reducing the settlement to a formal Joint Settlement Agreement and Release ("Settlement Agreement") which was fully executed on August 1, 2013. Schaffer Decl. ¶ 26, Ex. A.

As of December 20, 2013 Fitapelli & Schaffer has expended 324 hours litigating and settling the case, including attorney, paralegal, and administrative staff hours. Schaffer Decl. ¶ 48. As of December 18, 2013, Shulman Kessler spent more than 460 hours litigating and settling the case, including attorney, law clerk, and administrative staff hours.

> **b.    Magnitude and Complexity of the Litigation**

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *In re Prudential Sec. In. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996). "FLSA claims typically involve complex mixed questions of fact and law," and issues must be resolved "in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Rule 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Justice is served and consistency and efficiency are achieved by having the litigation in one forum because the same set of operative facts are being applied and analyzed

18

under both statutory frameworks. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

### c.     Risk of Litigation

"Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees." *In re Dreyfus Aggressive Growth Mut. Fund Litigation*, 2001 WL 709262, *6 (S.D.N.Y. June 22, 2001).  When considering fee applications, courts must approach them "with an eye to moderation" because of the belief that counsel bring class and collective actions as a "quest for attorneys['] fees." *Goldberger*, 209 F.3d at 53.  In *Goldberger*, the court held that the risk needed to enhance attorneys' fees did not exist, and thereby, affirmed the district court's decision to decrease the requested fee award. *Id.* at 54 ("[T]he district court found that, from counsel's perspective, this was a 'promising' case, with almost certain prospects of a large recovery from solvent defendants. The court reasonably concluded that enhancing fees above already generous rates included in the lodestar 'would likely result in counsel's overcompensation'").

The same cannot be said in the instant action.  Here, Class Counsel faced unique risks on the merits of the claim, including overcoming Defendants' defense that Plaintiffs were properly classified as exempt from overtime pay under FLSA's outside sales exemption.  NYLL governing overtime pay applies the same exemptions as the FLSA. N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2 (2014).  FLSA's "outside sales exemption" exempts from the overtime pay requirement employees "(1) [w]hose primary duty is (i) making sales within the meaning of Section 3(k) of the Act; or (ii) obtaining orders or contracts for services or for use of facilities for which a consideration will be paid by the client or customer; and (2) [w]ho is primarily and regularly engaged away from the employer's place or places of business in performing such

primary duty." 29 C.F.R. § 541.500(a). "[W]ork performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections" and "work that furthers the employee's sales efforts" is regarded as exempt outside sales work. 29 C.F.R. § 541.500(b). "Sale" is defined as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." "[O]ther disposition" is a "broad catch-all phrase" that is "most reasonably interpreted as including those arrangements that are tantamount, in a particular industry to a paradigmatic sale of a commodity." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2171-72 (2012).

Marketing Representative Class Members are responsible for "enroll[ing] eligible individuals in Medicaid." Am. Compl. ¶ 5. Retention Representative Class Members are responsible for enrolling new applicants and "contacting individuals who need to recertify or submit updated documents in order to maintain their benefits." *Id.* ¶ 6. Both positions are required to process a certain number of applications per week. *Id.* ¶¶ 5, 6. Both Marketing Representative and Retention Representative Class Members "routinely make phone calls to new and existing members, schedule appointments and make home visits." *Id.* ¶ 7. Marketing Representative Class Members "are deployed to fixed locations," *id.* ¶ 5, and Retention Representative Class Members "divide their time between fieldwork and office hours." *Id.* ¶ 6.

Given the broad interpretation the Supreme Court gave to "sales" in *SmithKline Beecham Corp.*, Royal Health Care may be able to prove that they properly classified Class Members as exempt. An insurance agent, an analogous position to Class Members' positions, has been found to be exempt from overtime under the outside sales exemption. *Gold v. New York Life Ins. Co.*, 09cv3210 (WHP), 2011 WL 2421281 (S.D.N.Y. May 19, 2011).

20

Class Counsel also faced the challenge of class certification after *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), which Defendants argued would prohibit Plaintiffs from certifying a class because their claims were too individualized. To certify a class under Federal Rule of Civil Procedure 23(b)(3), Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In *Comcast Corp. v. Behrend*, the Supreme Court reversed the Third Circuit's certification of a class under Rule 23(b)(3). 133 S. Ct. at 1435. The Court found that because the damages model provided by Plaintiffs did not limit its measure of damages to those resulting from the particular theory of liability accepted by the district court, therefore leaving open the possibility that the damages that were identified "[were] not the result of the wrong," the Plaintiffs failed to "establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." 133 S. Ct. at 1433. Given the strict standard set out in *Comcast* for certification under Rule 23(b)(3), Plaintiffs might have had difficulty proving that "questions of law or fact common to class members predominate," and Royal Health Care might successfully have been able to show that Plaintiffs' claims are too individualized for certification.

Finally, Class Counsel faced the difficulty of establishing the rate at which overtime wages should be calculated for Class Members. In settlement negotiations, Royal Health Care strenuously disputed Class Counsel's calculations. Schaffer Decl. ¶ 25.

Unlike in *Goldberger*, the instant matter was not a "'promising' case, with almost certain prospects of a large recovery." 209 F.3d at 54. Class Counsel faced the general risk of recovery, namely, non-collection because of potential bankruptcy and collective and class action waivers.

21

Specifically, Class Counsel faced significant risk with Rule 23 class and FLSA collective certification and proving the merits of the claim. The risk associated with this litigation weigh in favor of granting a contingency fee.

### d.      Quality of Representation

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the background of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 cv7951 (PKL), 2007 WL 414493, *1 (S.D.N.Y. Jan. 31, 2007). Defendants have agreed to pay a total of $1,949,000 to settle this litigation. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is reasonable.

Class Counsel has substantial experience in wage and hour class and collective action cases. Schaffer Decl. ¶¶ 40-41 (listing cases); Kessler Decl. ¶¶ 6-9 (listing cases). Courts have viewed counsel's experience in wage and hour cases as directly responsible for a favorable settlement. *See Velez*, 2007 WL 7232783, at *7 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a contingency fee award); *Frank*, 228 F.R.D. at 189 (citing plaintiffs' counsel's experience to support an attorneys' fee award of 40% of the fund). Class Counsel's experience in wage and labor litigation also weighs in favor of finding that the fee award is reasonable.

### e.      Requested Fee in Relation to the Settlement

Courts consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall. "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00cv6689 (SAS), 2003 WL 22244676, *6 (S.D.N.Y. Sept.

28, 2003).  Where the size of the fund is relatively small, courts typically find that requests for a

greater percentage of the fund are reasonable.  *See, e.g., In re Gilat Satellite Networks, Ltd.*, No.

02cv1510 (CPS)(SMG), 2007 WL 2743675, *16 n. 41 (finding a 30% fee would not constitute a

windfall "given the modest size of the [$20 million] settlement").

      Class Counsel is requesting 33.3% of the $1,949,000 Settlement.  This case does not

require a "sliding scale" approach to prevent a windfall because the requested amount is

"consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754862, at *6-7

(awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour

action); *see also Clark v. Ecolab, Inc.*, No. 07cv8623 (PAC), 2010 WL 1948198, at *8-9

(S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA and multi-state

wage and hour case).

      **f.**    **Public Policy Considerations**

      When determining whether a fee award is reasonable, courts consider the social and

economic value of the class action, "and the need to encourage experienced and able counsel to

undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y.

1999).  FLSA and NYLL are remedial statutes designed to protect the wages of workers.  The

remedial purposes of these statutes require adequate compensation for attorneys who protect

those rights. *Khait*, 2010 WL 2025106, at *8; *Sand*, 2010 WL 69359, at *3 ("But for the

separate provision of legal fees, many violations of the Fair Labor Standards Act would continue

unabated and uncorrected.").  Moreover, class actions are an invaluable safeguard for public

rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  The public policy

benefits of this action weigh in favor of awarding the requested attorneys' fees.  Class Counsel

successfully negotiated a settlement agreement that redresses a substantial portion of the

monetary damage suffered by Class Members and complies with this Circuit's precedent.   When considering all the *Goldberger* factors, the requested fee award appears to be reasonable.

## 2.   Lodestar "cross check"

Applying the lodestar method as a "cross check," *see Goldberger*, 209 F.3d at 50, the Court finds that the fee that Class Counsel seeks is reasonable.   Courts award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at *13 ("Courts routinely award lodestar multipliers between two to six."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96cv1262 (RWS), 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see, e.g., Steiner v. Am. B'casting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11cv520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar*); Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-86 (W.D.N.Y. 2011) (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*, No. 10cv463 (LHK), 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05cv11148 (PBS), 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of six); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587

24

(E.D. Pa. 2005) (awarding multiplier of seven); *Maley v. Del Global Techs. Corp.*, 186 F. Supp.

2d 358, 371 (S.D.N.Y. 2002) ("modest multiplier" of 4.65 in wage and hour class action was

"fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88cv7905 (MBM), 1992 WL

210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of six); *Cosgrove v. Sullivan*, 759

F. Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74).

The following rates and hours are claimed herein:

| Individual | Hours | Rate | Fees |
|---|---|---|---|
| Brian S. Schaffer (F&S Partner) | 107.5 | $425/hour | $45,687.50 |
| Joseph A. Fitapelli (F&S Partner) | 69.8 | $425/hour | $29,665.00 |
| Frank Mazzaferro (F&S Associate) | 92.6 | $250/hour | $23,150.00 |
| Andrew Kimble (F&S Associate) | 21.2 | $250/hour | $5,300.00 |
| Law Clerks (F&S) | 37.6 | $125/hour | $4,700.00 |
| Administrative Assistant (F&S) | 1.3 | $100/hour | $130.00 |
| Troy Kessler (SK Partner) | 113.5 | $425/hour | $48,237.50 |
| Marijana Matura (SK Associate) | 137.9 | $275/hour | $37,922.50 |
| Law Clerk (SK) | 52.7 | $125/hour | $6,587.50 |
| Administrative Assistants (SK) | 163.2 | $100/hour | $16,320.00 |
| TOTAL: | 797.3 | | $217,700.00 |

Together, Class Counsel spent a total of 797.3 hours working on the case for a total lodestar of $217,700. The Court finds these rates and hours to be reasonable, considering the rates generally charged in this District. *See Maldonado v. La Nueva Rampa, Inc.*, No. 10cv8195 (LLS) (JLC), 2012 WL 1669341 (S.D.N.Y. May 14, 2012) (considering the "prevailing market rates 'for similar services by lawyers of reasonably comparable skill, experience and reputation'" in awarding attorneys' fees pursuant to a default judgment).

The percentage recovery for the Settlement therefore represents about 2.98 times the lodestar. This multiplier is near the lower end of the range of multipliers that courts have allowed. Furthermore, because "'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at *13 (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07cv 2207 (JGK), 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)); *Reyes*, 2011 WL 4599822, at *8. The Court hereby awards Class Counsel $649,666.66 in attorneys' fees for the Settlement, which is 33.3% of the settlement fund.

### 3.   Costs

The Court also awards Class Counsel reimbursement of its litigation expenses in the amount of $7,275.83. Schaffer Decl. ¶ 58; Kessler Decl. ¶ 21. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). Here, Class Counsel's unreimbursed expenses, including filing fees, service fees, postage, photocopies, and electronic research, (Schaffer Decl. ¶ 58; Kessler Decl. ¶ 21), are reasonable and were incidental and necessary to

26

the representation of the class.  The attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

### 4.      Administrative Fees

Kurtzman Carson Consultants LLC ("KCC") is a claims administrator retained by Plaintiffs' counsel to administer the settlement process.  (Schaffer Decl., Ex. A ¶ 2.1.)  The Settlement Agreement provides that KCC's fees shall be paid from the Settlement Fund.  (*Id.* ¶¶ 2.1, 3.1.)  The Court-approved Notice informed Class Members that KCC fees would be paid from the Settlement Fund.  (Schaffer Decl., Ex. C ¶ 16.)   KCC has been approved as an administrator in other class settlements in the Second Circuit.  *See Hernandez v. Merrill Lynch & Co.*, No. 11cv8472 (KBF) (DCF), 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11cv0520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012).

KCC has disseminated Notice to Class Members and is responsible for calculating Class Members' share of the Settlement Fund, and cutting and mailing checks to qualified Class Members.  (Schaffer Decl., Ex. A ¶ 2.1.)  KCC has estimated that its fees for this settlement will total $16,500, which is consistent with prevailing market rates.  (Schaffer Decl., Ex. B ¶ 16.) The Court awards KCC its reasonable fees, not to exceed $16,500.

### 5.      Service Awards

Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risk incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.  *Reyes*, 2011 4599822, at *9.   It is important to compensate plaintiffs for the time they spend and the risks they take.  *Massiah v. MetroPlus Health Plan, Inc.*, No. 11cv5669 (BMC), 2012 WL

5874655, at *8 (E.D.N.Y. Nov. 20, 2012).  The Named Plaintiffs provided counsel with relevant documents, informed putative Class Members of the lawsuit and encouraged them to participate, appeared for depositions, assisted counsel in preparing for mediation and settlement discussions, and reviewed and commented on the terms of the settlement.  Schaffer Decl. ¶ 35.  The Court finds reasonable service awards of $10,000 to each of the named Plaintiffs, for a total service award amount of $40,000.  These amounts shall be paid from the settlement fund.

The "Effective Date" of the settlement shall be thirty days after the date of this Order if no party appeals this Order.  If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved.  This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

Within fifteen days of the Effective Date, the claims administrator shall distribute the funds in the settlement account by making the following payments in the order below:

(1)     Paying Class Counsel one-third of the fund ($649,666.66);

(2)     Reimbursing Class Counsel for $7,275.83 in litigation costs and expenses;

(3)     Paying reasonable fees, not to exceed $16,500, to the Claims Administrator, Kurtzman Carson Consultants LLC;

(4)     Paying service awards of $10,000 each to Plaintiffs Chandrakalli Sukhnandan, Farhana Akter, Tara Singh-Paltoo, and Sonia Bailey;

(5)     Paying the remainder of the fund to class members in accordance with the allocation plan described in the Settlement Agreement.

**SO ORDERED** this 31st  day of July 2014
**New York, New York**

The Honorable Ronald L. Ellis
United States Magistrate Judge